UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA

        - v. -

                                                   10 Cr. 391 (CM)

ANTHONY BOYKIN, et al.,

                Defendants.

---------------------------------------------------------X

**THE RECENT DECISIONS HOLDING THAT DEFENDANTS WHO HAD BEEN SENTENCED PRIOR TO THE ENACTED OF THE FAIR SENTENCING ACT WERE NOT ELIGIBLE FOR SENTENCE MODIFICATION HAS NO PRECEDENTIAL VALUE IN DETERMINING WHETHER IT APPLIES HERE**

The one Second Circuit decision was for summary judgment, expressly providing for no precedential effect. *United States v. Baldwin*, 09-1725-cr October 27, 2010. The other prior decisions, unlike the instant case, related to defendants that had been sentenced prior to the enactment date of August 3, 2010.[1] In *United States v. Douglas* 2010 WL 4260221, (D.Me.,

---

[1] *See United States v. Douglas* 2010 WL 4260221, footnote 28 at 3 (D.Me., October 27, 2010) *United States v. Bell*, No. 09-3908, 2010 WL 4103700, at *10 (7th Cir. Oct. 20, 2010) (challenging on direct review sentence imposed prior to the enactment of the Fair Sentencing Act); *United States v. Brown*, No. 10-1791, 2010 WL 3958760, at *1 (8th Cir. Oct. 12, 2010) (same); *United States v. Gomes*, No. 10-11225, 2010 WL 3810872, at *2 (11th Cir. Oct. 1, 2010) (same); *United States v. Carradine*, No. 08-3220, 2010 WL 3619799, at *12-13 (6th Cir. Sept. 20, 2010) (same); *United States v. Millhouse*, No. 7:04-CR-85-F3, 2010 U.S. Dist. LEXIS 112988, at *6 (E.D.N.C. Oct. 22, 2010) (denying motion to reduce sentence); *United States v. Jones*, No. 08-40, 2010 U.S. Dist. LEXIS 110423, at *3 (W.D.Pa. Oct. 18, 2010) (same); *United States v. Hughes*, No. 07-33, 2010 WL 3982138, at *3 (W.D.Wis. Oct. 8, 2010) (same); *United States v. Ohaegbu*, No. 92-35, 2010 WL 3490261, at *1-2, (M.D.Fla. Aug. 31, 2010) (same).

October 27, 2010)  Judge D. Brock Hornby set forth the basis for finding that the FSA did apply to those defendants with pending matters before the district courts.  Unlike the earlier decisions that hardly touched on the extensive legislative history of the Act,  Judge Hornby did. So has the defendants in our attached memorandum of law.  It is also not clear of the effort and extent of the briefing by the parties to these cases, especially as it related to the issue of Congressional intent and its effect of the applicability of the "Savings Clause" in that these motions were filed for the purpose of reducing existing sentences.

   However, both Professor Berman in his amicus letter brief and Judge Hornby went beyond our submission's review of legislative history. Both authors discussed the incongruity of  instructing the Sentencing Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guidelines provisions and applicable law." *Douglas* at *14. As Judge Hornby noted, the Congressional intent will be frustrated and the "new Guidelines cannot be 'conforming' and 'achieve consistency' if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statue of limitations runs on pre-August 3, 2010 conduct." *Ibid*.

   Judge Hornby distinguished *Warden v. Marrero*, 417 U.S. 653 (1974) from his case by noting that the new statute considered in that case had its own savings clause while there is none in the FSA.  *Id*. at *13. Perhaps of even greater significance is the fact that at the time the statute in issue in *Marrero* was passed, there were no Sentencing Guidelines for Congress to consider. The manner that Congress considered the guidelines, the language used by its members in

relation to the interplay between the FSA and the Guidelines and the directives to the Sentencing Commission illuminates Congressional intent that it did not wish for the courts to continue sentencing individuals "under a law that virtually everyone agrees is unjust." 156 Cong. Rec. S1680, 1681 (daily ed. March 17, 2010) by Senator Durbin.

That Congress did not seek to open the door to the thousands of previously imposed sentences does not require the determination that Congress wanted to continue the indefensible and unjust practices over the last twenty-five years. Moreover, it is certain that Congress was aware that many sentencing hearings relating to convictions for crack distribution and possession had been intentionally delayed awaiting the outcome of Congressional action.[2]   It seems incongruous that Congress would seek to require an immediate modification of the Guidelines for the benefit of those defendants who have not been sentenced but require these same individuals to face the unjust and racially discriminatory mandatory minimums that would be substantially greater that the new Guideline ranges.

For example, Under the new Guidelines, a defendant who distributed five (5) grams of crack cocaine would have a base offense level of 16.  With a three level reduction for acceptance of responsibility and criminal history category I, a defendant would face a Guideline range of 12-18 months. With a safety valve proffer, the range would be as low as 8-14 months. Under the old crack law, this defendant would face a mandatory minimum of five (5) years in jail.  If he had a prior felony drug offense as defined in the statue, this individual would face a mandatory ten

---

[2] I have spoken to Karen Wilkenson, counsel to the Judiciary Committee and other members of the staff of the full Judiciary Committee and the subcommittee for Crime, Terrorism and Homeland Security in relation to the expectation of what changes were expected and the timing of the passage of the bill in 2009 and 2010. I assume many other attorneys did the same.

(10) years in jail even though his Guidelines range, depending a what sentence he received for his prior conviction, would be as low as 8-14 months or as high as 15-21 months if he was CHC II and not safety valve eligible. We submit that it is clear that this was not the intent of Congress.