RUHNKE & BARRETT
ATTORNEYS AT LAW

47 PARK STREET
MONTCLAIR, N.J. 07042
973-744-1000
973-746-1490 (FAX)

2 WALL STREET, THIRD FLOOR
NEW YORK, N.Y. 10005
212-608-7949
212-571-3792 (FAX)

DAVID A. RUHNKE (davidruhnke@ruhnkeandbarrett.com) ◊ JEAN D. BARRETT (jeanbarrett@ruhnkeandbarrett.com)

REPLY TO <mark>MONTCLAIR</mark> OFFICE

May 4, 2011

By ECF and UPS Next Day
Hon. Colleen McMahon, U.S.D.J.
U.S. District Court - Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    *U.S. v. Darryl Cotton,* 10 Cr. 391-14 (CM)

Dear Judge McMahon:

    Darryl Cotton is scheduled for sentencing by the Court on May 11, 2011. Please accept this letter memorandum setting forth Mr. Cotton's position regarding certain aspects of the guideline calculation and in support of a sentence of time served.

A.    <u>Mr. Cotton's background and criminal conduct</u>

    Mr. Cotton pled guilty to the distribution of CDS in an amount between 16.8 and 22.4 grams during the Summer of 2007. Mr. Cotton had been charged substantively with three instances of distribution of a ½ gram of crack at the end of August and the beginning of September, 2007. In April, 2008, he was arrested by New York State authorities. He was sentenced on July 17, 2008 to a term of imprisonment of 42 months with 18 months post release supervision.

    At the time of his arrest on this offense, he had been on work release for more than two months, working as a cook in a local Wendy's. He has a conditional release date from state custody of July 14, 2011.

    While, as part of his plea agreement, Mr. Cotton agreed to forgo argument for a downward departure, the Government agreed that he could argue that criminal history category of IV overstated the seriousness of Mr. Cotton's record under a 18 U.S.C. §3553(a) analysis. In addition, it is submitted that the Court could also consider as part of its analysis, the fact that Mr. Cotton's offense occurred almost four years ago and was motivated by a desire to support a drug habit which he has since done everything in his power to overcome, by participating in the ASAT drug program while incarcerated and attending a Catholic Charities outpatient drug program in Newburgh.

Finally, when conducting the §3553(a) analysis, this Court should also consider that Mr. Cotton spent his formative years with his cocaine-addicted father after having been abandoned by his mother at the age of five or six. While this does not excuse his criminal conduct, it is certainly true that his abandonment and exposure to drug abuse in the home contributed to his own drug use and, ultimately, the sale of drugs to support his habit.

B.  The Post-*Booker* sentencing paradigm.

Obviously, this Court is well versed in the role of the Guidelines post-*Booker*, but I will briefly summarize the process nevertheless. First the Guidelines are calculated, followed by rulings on any departure motions. *Rita v. United States*, 551 U.S. 338, 347-48 (2007); *Gall v. United States*, 552 U.S. 38, 49-50 (2007). However, the Guidelines are not the only consideration. As the Supreme Court pointed out in *Gall*, the procedure established in *Rita* is the applicable one.

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.

*Gall* 552 U.S. at 49-50. [Citation and footnote omitted.]

The factors set forth in 18 U.S.C. §3553(a) are "the nature and circumstances of the offense and the history and characteristics of the defendant;" the general purposes of sentencing; the kinds of sentences available; the sentencing Guidelines; relevant policy statements by the Sentencing Commission; "the need to avoid unwarranted sentence disparities;" and, the need for restitution. There is no presumption of reasonableness to the Guideline range. Rather, the Guidelines and their policy statements are but two of seven factors that are appropriately consider by the district court. *Gall,* 552 U.S. at 50. *See also*, *Kimbrough v. United States*, 552 U.S. 85 (2007) (allowing judges to impose lower sentences based on the unfairness of the 100 to 1 crack cocaine ratio). As the Court first noted in *Koon v. United States*, and repeated in *Gall*,

> every convicted person is an individual and every case [is] a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

518 U.S. 81, 98 (1996), *quoted at Gall,* 552 U.S. at 52.

The final sentence, whether inside or outside the Guideline range is with in the sound

discretion of the district court. *Id*. at 41. A district court's judgment that a particular sentence is "*sufficient, but not greater than necessary*" is entitled to great weight, even if the district court's judgment is based on its disagreement with the policies behind the applicable guideline. *Kimbrough,* 552 U.S. at 101. [Emphasis added.]

Lest there be any doubt that the Guidelines are a small part of the sentencing analysis to be conducted by district courts and that district courts have broad discretion to individualize sentencing, the Supreme Court reinforced these principles when it granted petitions and immediately reversed and remanded in two 2009 cases. In *Spears v. United States*, the Eighth Circuit had reversed a district court which had categorically rejected the 100:1 crack-to-powder ratio, substituting its own ratio in calculating Spears' sentence. 555 U.S. 261, 129 S.Ct. 840, 842 (2009). The Supreme Court held that the Eighth Circuit's conclusion that the district court erred "conflicts with our decision in *Kimbrough*." *Id*. In holding that "a categorical disagreement with and variance from the Guidelines is not suspect," the Court reaffirmed its holding in *Kimbrough* that the district court has the authority to vary from the crack Guidelines based on a policy disagreement with them, "not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Id*. at 843.

Five days later, the Court took the same route in summarily reversing the Fourth Circuit which had persisted in upholding a district court's application of a presumption of reasonableness to the Guidelines. *Nelson v. United States*, 129 S.Ct. 890 (2009). The Court declared that

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

*Id*. at 892. [Emphasis in original.] Thus, the Guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

C.  <u>Mr. Cotton's Guideline criminal history level substantially over-represents the seriousness of his record and the likelihood that he will commit another offense.</u>

Mr. Cotton was first arrested seven years ago at the age of 17, charged with attempted CSCS. Initially, he received a sentence of 5 months, followed by a period of probation. He violated his probation, apparently by being arrested for criminal possession of a controlled substance the following November. He received concurrent sentences for the probation violation and the second charge on February 28, 2006.[1] Thus, the offenses were treated by the

---

[1] Paragraph 66 states the sentence date was 2/28/05. This is obviously incorrect since the arrest on the charge was in November of 2005.

state court as a single ongoing course of conduct. Nevertheless, the Guidelines attribute three criminal history points to *each* case. Although these cases technically have two sentences, it is apparent that the state courts did not treat the crimes separately for sentencing purposes. Neither should this Court.

Furthermore, the nature of the charges for which he received the sentence were far from the most serious offenses to which three criminal history points apply. The bar for adding three points, at one year and one month, is set so low that street-sale drug offenses are given the same weight as the most serious crimes of violence, major frauds and treason. For these reasons, the criminal history category IV drastically overstates the seriousness of Mr. Cotton's record and the likelihood that he will commit another offense.

D.  <u>A sentence of time served is a sufficient, but no greater than necessary punishment for Mr. Cotton</u>.

Darryl Cotton is now a twenty-four year old man who has been incarcerated for 36½ months. The Government agrees that Mr. Cotton is entitled to have all of this time credited to the sentence to be imposed by this Court. This is, of course, only fitting since Mr. Cotton's state time was meted out for some of the same conduct to which he has pled guilty here. His road to rehabilitation following his state sentence was curtailed by the federal arrest for this four-year-old crime and he has been compelled to spend the last year in MCC with few of the rehabilitation opportunities available in a correctional facility.

Nevertheless, Mr. Cotton has taken advantage of the available opportunities for self-improvement at MCC, including studying for his GED. Most tellingly, he was selected by staff at MCC to be an inmate companion for fellow prisoners on suicide watch. The fact that he was trustworthy enough and compassionate enough to be assigned this duty reflects well on his character. Given these circumstances and the other 3553(a) factors previously mentioned, it is submitted that a sentence of time served for Darryl Cotton is a sufficient, but no greater than necessary punishment.

Thank you for your consideration of these comments,

Respectfully submitted,

*/s/ Jean D. Barrett*
Jean D. Barrett

cc by ecf:   Michael Maimin, A.U.S.A.
 by mail:   Darryl Cotton