```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/7/11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

UNITED STATES OF AMERICA,

    -against-

ANTHONY BOYKIN, Et al.,

    Defendants.

———————————————————————x

10 Cr. 391 (CM)

## DECISION AND ORDER ON DEFENDANTS' PRETRIAL MOTIONS

McMahon, J.:

On May 5, 2010, a grand jury handed up an indictment (the "Indictment") charging the 60 defendants in this case with participating in a conspiracy, from at least in or about 2007, up to and including in or about May 2010, to distribute and possess with intent to distribute 50 grams and more of "crack," in violation of Title 21, United States Code, Section 846. This conspiracy count (Count One) provides a detailed description of the "Means and Methods of the Conspiracy," as well as 166 individual overt acts in furtherance of the conspiracy. (Indictment ¶¶ 4-11). Each defendant is named in at least one overt act, whether alone or with others.

Additionally, twenty-two defendants were charged, whether alone or with others, in Counts Two through Twenty-Nine, with substantive counts of distribution and possession with intent to distribute crack cocaine in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) and Title 18, United States Code, Section 2.

On May 13, 2010, the Indictment was unsealed. Since that time, 59 defendants have appeared before the Court and the vast majority of the defendants have pled guilty.

While a large number of defendants filed pre-trial motions, most of those defendants have pled guilty. However, the following motions remain pending and unresolved: (1) Danny McNair's motion for a bill of particulars; (2) McNair's motion to dismiss Count One of the Indictment; (3) McNair's motion to sever; (4) Joseph McLean's motion to suppress; and (5) McLean's motion for the Government to provide notice of other crimes, wrongs, or bad acts to be used at trial.[1]

Bill of Particulars & Additional Discovery

Each of the defendants named in the Indictment is charged in the crack cocaine conspiracy (Count One) and twenty-two defendants are charged with specific instances of the distribution or possession with intent to distribute crack cocaine (Counts Two through Twenty-Nine). Count One alleges that:

> From at least in or about 2007, up to and including in or about May 2010, in the Southern District of New York and elsewhere, [the defendants], and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.
>
> It was a part and an object of the conspiracy that [the defendants], and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).
>
> The controlled substance involved in the offense was 50 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack," in violation of Section 841(b)(1)(A) or Title 21, United States Code.

(Indictment ¶¶ 1-3). Count One includes an extensive "means and methods" section as well as 166 separate overt acts in furtherance of the charged conspiracy. (Indictment ¶¶ 4-11). Although the "means and methods" section of the Indictment describes the presence and activity

---

[1] Various defendants have made motions – orally and in writing -- to join in the motions of the moving defendants. However, many of those defendants have since pled guilty. To the extent the relief requested by defendants McNair and McLean is relevant to another defendant whose case is still pending, the Court deems McNair's and McLean's motion filed on behalf of all such defendants.

2

of the Bloods street gang, and the importance of the Bloods to the charged conspiracy, no defendant was charged with being a member of the Bloods; to the contrary, the Indictment specifically alleged that there were co-conspirators in the charged conspiracy who were not members of the Bloods:

> Other individuals who were not members of the Bloods conspired with the Newburgh Bloods to operate the drug markets in Newburgh, New York. Among other things, these associates of the Newburgh Bloods helped supply them with crack cocaine, and otherwise aided the criminal activities of the Newburgh Bloods, including narcotics distribution.

(Indictment ¶ 8).

On or about October 18, 2010, defense counsel for Joshua Arnold, on behalf of all the defendants, requested a bill of particulars, seeking, among other things: (1) the identities of co-conspirators and the times at which the defendants joined the conspiracy; (2) information about the Bloods street gang; (3) information about "drug markets"; (4) information about the "basis" of allegations in the Indictment; (5) information about "other act" evidence; and (6) information relevant to sentencing. (See Letter from Sam Schmidt, Esq. to A.U.S.A. Michael Maimin dated 10/18/10 (Docket Entry 314-1)).

On or about November 13, 2010, the Government replied, addressing each of the defendants' requests. (See See Letter from A.U.S.A. Michael Maimin to Sam Schmidt, Esq. dated 11/13/10 (Docket Entry 314-2)). According to the Government, it also provided certain information and offered to make additional information available about *inter alia*: the common locations for Bloods meetings; the dates and locations of nineteen separate acts of violence the Government was investigating, which may be related to the charged conspiracy; and information about which defendants were identified on footage from the the 24/7 pole camera. (Govt. Memo at 18).

3

With respect to defendant Danny McNair, who formally moved for the bill of particulars, the Government represents that it told McNair's counsel that: (1) it does not know of McNair's being involved in acts of violence in furtherance of the conspiracy; (2) does not believe that McNair was a member of the Bloods; and (3) understands that McNair was primarily a "supplier," or "weight mover" within the charged conspiracy. The Government has also informed McNair's attorney that it has not attempted to locate McNair on the 24/7 pole cameras (for which the earliest recordings date from May 15, 2009), because McNair was arrested in New York City on or about April 25, 2009, and, according to his criminal history, was remanded without bail, where he has remained since. (Govt. Memo at 7-8).

The proper scope and function of a bill of particulars is to furnish facts, supplemental to those contained in the indictment, necessary to apprise the defendants of the charges against them with sufficient precision so as to enable them to prepare a defense, to avoid unfair surprise at trial, and to preclude a second prosecution for the same offense. Fed. R. Crim. P. 7(f); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990), *overruled on other grounds as recognized by* United States v. Marcus, 628 F.3d 36 (2d Cir. 2010); United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984). If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery or other correspondence, no bill of particulars is required. Bortnovsky, 820 F.2d at 572; D'Amico, 734 F. Supp. 2d at 335; United States v. Spy Factory, 960 F. Supp. 684, 690-91 (S.D.N.Y. 1997). Accordingly, the ultimate test is whether the information sought is necessary, not whether it is helpful. See United States v. Lauersen, No. 98 Cr. 1134 (WHP), 1999 WL 440619, *3 (S.D.N.Y. June 28, 1999); United States v. Percan, No. 98 Cr. 392 (AGS), 1999 WL 13040, *5 (S.D.N.Y. Jan. 13, 1999).

Here, the Indictment, as supplemented by extensive discovery -- including, the Government's disclosures to any defense counsel who asked -- is more than sufficient to: (i) enable the defendants to prepare their defense; (ii) avoid unfair surprise at trial; and (iii) preclude a second prosecution for the same offense. See Wong Tai v. United States, 273 U.S. at 80-82; United States v. Torres, 901 F.2d at 234.

Accordingly, the motion for a bill of particulars is denied.

Motion to Dismiss

McNair moves to dismiss Count One, arguing that "The Indictment is lacking in any particularity whatsoever with respect to the conspiratorial agreement in which Danny McNair allegedly participated." (Walsh (McNair's Attorney) Declaration at ¶ 12). The gist of the argument is that, to prove a conspiracy, the Government must "demonstrate that the defendant 'participated in the alleged enterprise with a consciousness of its general nature and extent'" and that "each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." (Id. at ¶ 13 (citations omitted)).

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." It is well settled that an "indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against him." United States v. Velastegui, 199 F.3d 590, 592 n.2 (2d Cir. 1999), cert. denied, 531 U.S. 823 (2000); United States v. Walsh, 194 F.3d 39, 44 (2d Cir. 1999). Thus, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Stavroulakis, 952 F.2d at 693 (internal quotation and citation omitted). Accord United States v. Walsh, 194 F.3d at 44; United

5

States v. Bargaric, 706 F.2d 42, 61 (2d Cir. 1983). Thus, an indictment under 21 U.S.C. § 846 need only allege the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated. See United States v. Bermudez, 526 F.2d at 94.

Since the Count One includes information in excess of the minimum pleading requirements – ie., that a conspiracy allegedly existed, the duration of the conspiracy and the particular statute violated -- McNair's motion to dismiss Count One is denied.

Motion to Sever

Danny McNair seeks to sever the trial of Count Seven from "this multi-defendant 'Blood' gang related conspiracy." (Walsh (McNair's attorney) Declaration at ¶ 17). Count seven alleges that on April 21, 2009, Danny McNair and Alexander Jackson engaged in the distribution or possession with intent to distribute 5 grams or more of crack cocaine. (Since Alexander Jackson has pled guilty, Count Seven now only involves McNair)

Offenses and defendants are properly joined under Rule 8(b) where the criminal acts of two or more persons are "'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.'" United States v. Attansio, 870 F.2d 809, 815 (2d Cir. 1989); Fed. R. Crim. P. 8(b). Rule 14 of the Federal Rules of Criminal Procedure permits severance in certain circumstances:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

A defendant seeking severance must show that he would be so prejudiced by joinder that he would be denied a fair trial. United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989).

It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." Zafiro v. United States, 506 U.S. 534, 540 (1993). "A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. at 539 (citing Richardson, 481 U.S. at 211); see also United States v. Freyer, 333 F.3d 110, 114 (2d Cir. 2003).

The presumption in favor of joint trials "is particularly strong where the defendants are alleged to have participated in a common plan or scheme." United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998). With respect to participants in the same charged conspiracy, any claim of "prejudicial spillover" does not justify severance because the evidence would be admissible at a separate trial of the moving defendant. Rather, undue "prejudice" may occur "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper. This is an unlikely occurrence when all the defendants are charged under the same conspiracy count." Salameh, 152 F.3d at 115 (citation omitted).

McNair's request to sever Count Seven from the trial of Count One (the conspiracy) has absolutely no merit, since defendant is also charged in Count One and the conduct underlying Count Seven is also alleged to be an overt act in furtherance of Count One. According to the Government, the confidential informant was trying to buy several grams (a wholesale amount) of crack cocaine from one supplier/weight mover within the conspiracy, but had trouble contacting him. The confidential informant then spoke with Alexander Jackson, who referred the

7

confidential informant to McNair, who was readily able to supply more than five grams of crack cocaine to the confidential informant. This is evidence of what the Government has disclosed to McNair: that he was primarily a "supplier," or "weight mover" within the charged conspiracy.

The only colorable argument McNair has in favor of severance is that he played a comparatively minor role in the conspiracy relative to his co-conspirators and that he "ain't no Blood." Although the Government concedes that McNair was not a member of the Bloods (Govt. Memo at 7, 12), as stated above, the Government contends that the evidence at trial will show that McNair was an important part of the conspiracy, acting as a member of its supply chain. (Gov't. Memo at 38). But even if McNair turns out to be a bit player in the conspiracy, evidence of the larger conspiracy in which he participated does not constitute prejudicial spillover. "Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial." See United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993). Indeed, in the context of conspiracy, severance will rarely, if ever, be required because "any evidentiary spillover is vitiated where the evidence in all events would have been admissible against the movant." See United States v. DeLuca, 137 F.3d 24, 36 (1st Cir. 1998).

Accordingly, McNair's motion for a separate trial is denied.

McLean's Motion to Suppress

Joseph McLean moves to suppress evidence recovered from his person by law enforcement on January 8, 2010 and March 15, 2010.

According to Complaint, on or about January 8, 2010, Newburgh Police Officers saw McLean and another individual in a car that was parked in front of a fire hydrant, partially

obstructing traffic. (Complaint ¶ 4(b)). One officer looked into the car and saw small pieces of a white, rock-like substance on McLean's lap; he took that substance and field-tested it, finding the presence of cocaine. (Complaint ¶ 4(c)). The officers arrested McLean and found marijuana in McLean's pants pockets, as well as more cocaine near the driver. (Complaint ¶ 4(d)). The police officers took McLean to the police station, where he retrieved approximately 27.2 grams of crack cocaine from the area of his buttocks. (Complaint ¶ 4(f)-(g)). On March 15, 2010, law enforcement agents arrested McLean based on what had been found on January 8, 2010. (Complaint ¶ 5). At the FBI offices, McLean retrieved approximately 5.6 grams of crack cocaine from the area of his buttocks. (Complaint ¶ 6).

McLean has submitted an affidavit stating, *inter alia*, that, on January 8, 2010, he was sitting in a car that "was not obstructing traffic and it was not violating any traffic laws" (Id. ¶ 3), and that "While sitting in the car, I did not have any bags of crack cocaine in my hands or on my lap. No drugs were openly visible in the car" (Id. ¶ 4).

McLean has raised a disputed issue of fact that can only be resolved at a hearing. United States v. Noble, 07 Cr. 284 (RJS), 2008 WL 140966, *1 (S.D.N.Y. Jan. 11, 2008) (citing United States v. Dewar, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007); United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992)). Accordingly, the Court will hold a hearing on McLean's motion to suppress on August 4, 2011, at 11:00 a.m.

Trial Disclosures and Discovery

The Court will set dates for 404(b) notice, *in limine* motions and the disclosure of 3500 and Giglio material at the scheduled July 27, 2011, status conference.

This constitutes the decision and order of the court.

Dated: June 6, 2011

_____
U.S.D.J.

BY ECF TO ALL DEFENSE AND GOVERNMENT COUNSEL