UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA

    V.                                          S7 10 Cr 391 (CS)

JOSEPH McLEAN

------------------------------------X

## SENTENCING MEMORANDUM ON BEHALF
## OF DEFENDANT JOSEPH McLEAN

                                            JOYCE C. LONDON, Esq.
                                            Joyce C. London, P.C.
                                            20 Vesey Street
                                            New York, New York 10007
                                            (212) 964-3700

                                            -    and    -

                                            MEGAN WOLFE BENETT
                                            Southern District Mentoring Program

                                            *ATTORNEYS FOR DEFENDANT*
                                            *JOSEPH McLEAN*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

   - v -

                                     S7 10 Cr. 391 (CM)

JOSEPH McLEAN,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## SENTENCING MEMORANDUM ON BEHALF OF
## DEFENDANT JOSEPH McLEAN

This Sentencing Memorandum is respectfully submitted on behalf of defendant Joseph McLean for the Court's consideration in its determination of a sentence which is sufficient but not greater than necessary to comply with the purposes of sentencing as stated in 18 U.S.C. § 3553(a). In consideration of all the section 3553(a) factors, it is respectfully submitted that a term of imprisonment of twenty (20) years, which is the mandatory minimum term required by the charges to which Mr. McLean has pled guilty, is appropriate here to comply with the purposes of sentencing as stated in 18 U.S.C. § 3553 (a).

## I.    INTRODUCTION

The Pre-Sentence Report ("PSR") sets forth the background facts relating to all the charges in the indictment, the role of the many co-defendants and Mr. McLean's specific offense conduct. These will not be repeated herein. Rather, this Sentencing Memorandum will provide insight into Mr. McLean's life and background so that the Court can see this young man as a

1

three-dimensional figure, who has experienced much pain, hardship and disappointment in his short life, and thereby impose a sentence that takes into account these facts, in addition to the criminal activity in this matter for which he is responsible.

Joseph McLean was a boy coming from a troubled home life and suffering from substantial mental health issues when he was arrested in this case. For many of his youngest years, Joseph lived with his single mother and his half-sibling. But by the time he 18 years old, his age upon arrest, Joseph had been struggling for several years with his step-father, whose arrival in Joseph's life coincided with Joseph's forays into mischief, misconduct and criminal activity.

Despite his very young age, Joseph was able to make the difficult but mature decision to enter a plea of guilty to charges that carry, together, a mandatory minimum sentence of 20 years in prison. Joseph will have the opportunity to continue maturing over the many years that he will spend in federal custody and to rehabilitate himself in a manner that will afford him the opportunity to return to the outside world as a responsible, working adult. For the reasons set forth herein, we respectfully request that this Court sentence Joseph to the statutory mandatory minimum sentence in this case of 20 years in prison.

## II. OBJECTIONS TO THE PRE-SENTENCE REPORT

### 1. Factual Objections

Mr. McLean has no factual objections to the PSR. However, by letter dated March 1, 2012 to the Probation Department, counsel objected to the inclusion of so much information in the PSR which is not relevant to Mr. McLean. A copy of this letter is attached hereto as Exhibit

A. In fact, the first 27 pages of the 44 page PSR deal primarily with charges in which Mr. McLean is not named or to which he has not pled and the roles of the many co-defendants, including about six pages of "Special Findings" as to other defendants. See PSR paras. 64 – 71. In a supplemental letter to Probation, dated March 29, 2012, a copy of which is attached hereto as Exhibit B, we requested that Mr. McLean's PSR be patterned on the recent Southern District of New York PSR of a defendant charged in a twenty-two count superseding indictment naming 41 defendants. In that PSR, there was an introductory statement regarding the number of counts in the indictment, the number of pages in the indictment and the number of co-defendants. Then, stating "for the sake of brevity, only those charges therein to which *DEFENDANT* has pleaded guilty are included below."

It is respectfully requested that a similar format be used in Mr. McLean's PSR so that the voluminous information regarding counts and co-defendants that are not part of the charges to which Mr. McLean has pled guilty is removed.

2. **Legal Objections**

Mr. McLean has no legal objections to the PSR.

Mr. McLean has pled guilty to conspiring to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. Sec. 846, 841(b)(1)(A) – Count 17, and discharging a firearm in violation of 18 U.S.C. sec 924(c) – Count 24. He faces a 10 year mandatory minimum sentence on Count Seventeen and a 10 year mandatory consecutive sentence on Count Twenty-Four.

Pursuant to both the Plea Agreement and the PSR, Mr. McLean has a total offense level of 31 and is in Criminal History Category I. with respect to Count 17. This correlates with a guideline sentencing range of 108 – 135 months. However, Mr. McLean is subject to a 120-month mandatory minimum sentence on this count. Thus, the total statutory mandatory minimum sentence is, therefore, 240 months (20 years) in prison.

### III. UPON EXAMINATION OF THE 18 U.S.C. § 3553(a) FACTORS, THE STATUTORY MANDATORY MINIMUM SENTENCE IS APPROPRIATE

As this Court is aware, in imposing sentence, a federal court, after calculating the sentencing guidelines range, must give "both parties an opportunity to argue for whatever sentence they deem appropriate" and then "the district court judge should ... consider all of the [18 U.S.C.] § 3553(a) to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49 – 50 (2007). The section 3553(a) factors to consider include: (1) the nature of and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the advisory guidelines range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). After considering all of these factors, this Court must impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2). *Id.* (emphasis added).

In this case, the most relevant factors to Joseph's sentence are the unique personal history of the defendant and the need for the sentence imposed. This memorandum will not belabor the

charges to which Joseph pleaded guilty nor will it explain the nature and circumstances of the offense conduct, as that information is adequately explained in the Offense Conduct section of the PSR. See PSR paras 83 -98.

1. **The History and Characteristics of Joseph McLean**

At the age of 11, Joseph McLean's life began its downward spiral. Joseph had been raised from the time of his birth almost exclusively by his mother, Shaneeka Campbell. Ms. Campbell was but a child herself when she had Joseph – eighteen years old, no college education and minimal work experience. Joseph had little to no relationship with his father, who suffered from – and continues to suffer from – a debilitating addiction to crack cocaine and who was frequently incarcerated for activities connected to his drug addiction. Ms. Campbell worked hard as a nursing assistant to provide a home for Joseph (and, later, his two younger half siblings), and she and Joseph shared an exceptionally close and supportive relationship.

Then, in 2002, Ms. Campbell married Horace Campbell. Suddenly, Ms. Campbell was embarking on a new life with a new man and Joseph found himself relegated to a minor role in his household. Joseph and his new step-father had a difficult time finding the right balance in their relationship and it was at this time – with Joseph's role as his mother's primary relationship being displaced by his step-father's presence – that Joseph began acting out. In addition to the emotional turmoil Joseph was experiencing at home, around the same time he was diagnosed with Attention Deficit Hyperactivity Disorder. He was later determined to also suffer from bi-polar mood disorder. Though Joseph was prescribed medication to treat these conditions, he

5

continued to struggle with his personal relationships and he found himself frequently at odds with his mother and step-father.

The brutal combination of the ADHD, the mood disorder, the personal conflict and the sense of purposelessness combined to lead Joseph into a series of increasingly poor decisions. Around this critical period in his life, while in the fog of pre-pubescence and struggling with the new dynamic in his home life, Joseph began drinking and smoking marijuana, essentially self-medicating to treat his agitation, frustration and depression. He also engaged in increasingly risky behavior, joyriding in stolen cars, getting involved in fist-fights and challenging the authority of his parents and his teachers, among other things. When he was twelve years old, Joseph was arrested, removed from his home and placed temporarily in juvenile detention. As a consequence, Joseph spent over two years in the custody of the New York Office of Child and Family Services.

Though he was in and out of school, including alternative educational programs, Joseph dropped out of school and instead enrolled in a GED program in Newburgh. He also worked briefly as a minimum wage employee at a hat store near his home. He was arrested in this case before he was able to finish the GED courses. Before he was arrested, Joseph's entire world consisted of a small area in and around Newburgh, New York.

Then, faced with the very real possibility of a life sentence in prison – or worse – Joseph made the difficult decision to enter a plea of guilty to charges that carried with them a mandatory minimum sentence of 20 years in prison. Though the sentence is extreme, it has put to a stop what was a downward trend of Joseph's behavior around Newburgh. It will also provide him

with the opportunity for education, training and rehabilitation while incarcerated. And, indeed, for the first time in his young life, Joseph is now thinking about what career options might be available to him upon his release. He has made the very mature decision to accept responsibility for his actions and his maturity will only increase over the term of his imprisonment.

   2.   **The Need for the Sentence Imposed**

Joseph McLean, on the precipice of adulthood, entered a plea to two counts that he knew carried with them a mandatory minimum sentence of 20 years in prison. Although the low end of the guidelines calculation for the crack conspiracy count (Count 17), plus the mandatory consecutive 10 years for the firearm discharging count (Count 24), total 228 months, statutorily, no sentence below 240 months (20 years) in prison is currently available in this case. The fact that the guidelines recommendation starts at a point below the minimum available to the Court here is meaningful evidence that the statutory minimum is an appropriate sentence in this case and that the Court need not impose a greater one.

The magnitude of the incarceratory sentence Joseph faces – and the fact that he will spend all of his young adult years behind bars – should satisfy this Court that any individual and general deterrent goals are satisfied. Joseph will be in custody until well into his mid to late 30's, and such a dramatic term of imprisonment will surely provide substantial incentive for him to do everything reasonable in his power not to reoffend upon his release. Likewise, to the extent that any general deterrence is to be derived from Joseph's sentence, the prospect of such a long term in prison will surely accomplish that goal.

Similarly, a 20 year mandatory minimum sentence reflects the seriousness of the offenses to which Joseph has pleaded guilty and provides ample punishment for his offense conduct. Moreover, the time that Joseph will spend in prison will afford him the opportunities for reflection and self-improvement. He will have the chance to partake in educational and vocational training and thus be in a position to reenter the civilian world armed with the tools to successfully navigate a non-criminal lifestyle. The marginal benefit in terms of deterrence provided by increased incarceration over 20 years will be substantially outweighed by lost opportunities for Joseph to engage in a productive, law-abiding life upon his release, as each additional month that he spends in prison will be a month when he is older and less likely to find work in the outside world.

## IV. **CONCLUSION**

We respectfully request that this Court, upon consideration of the factors to be considered in imposing a sentence as set forth in 18 U.S.C. § 3553(a), impose a 20 year sentence, which is within the recommended advisory guideline range. This sentence would be sufficient but not greater than necessary to meet the factors set forth in 18 U.S.C. § 3553(a).

Dated: New York, New York
April 19, 2012

Respectfully submitted,

*Joyce London*

Joyce C. London
20 Vesey Street, Suite 400
New York, New York 10007
(212) 964-3700

       and    -

Megan Wolfe Benett
Southern District Mentoring Program

*Attorneys for Defendant Joseph McLean*