UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-30-25

UNITED STATES OF AMERICA,

-against-

Joseph McLean,

           Defendant.

10-CR-391-29 (CM)

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE OR REDUCTION OF SENTENCE

McMahon, J.:

    Joseph McLean is serving a sentence of 20 years' imprisonment for his participation in (1) a conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and (2) using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crack distribution conspiracy, which firearm was discharged, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. McLean has served about 15 years of his sentenced and is scheduled to be released April 5, 2028. (Bureau of Prisons ("BOP") Inmate Locator, last visited July 30, 2025).[1]

    McLean has filed a motion pursuant to § 3582(c)(1)(A) (a so-called "Compassionate Release" motion), asking the Court to reduce his sentence: (1) in light of the Supreme Court's

---

[1] The charges in this case center around McLean's membership in, and leadership of, the Bloods gang, in and around Newburgh, New York. Among other things, McLean participated in the murder of Tyrik Legette, assaults, and attempted murders. For a more fulsome recitation of McLean's criminality and the procedural history of this case, the reader is referred to the Government's Memorandum in Opposition to the present motion (ECF 2030 at 2-6).

decision in *Rosemond v. United States*, 572 U.S. 65 (2014), which addressed the elements of aiding and abetting a § 924(c) violation, which McLean argues constitutes a "change in law" permitting a reduction in his sentence pursuant to U.S.S.G. § 1B1.13(b)(6) (Motion 2–3); and (2) because he has demonstrated his rehabilitation by completing a "gang disassociation" program, permitting a reduction in sentence pursuant to U.S.S.G. § 1B1.13(b)(5) (Motion 3). McLean also argues that his general rehabilitation—consisting of gang disassociation, obtaining a GED, and taking various BOP educational and self-improvement courses—weighs in favor of granting him release. (Motion 3).

The Government opposes the motion arguing that (1) McLean has not demonstrated extraordinary and compelling circumstances for a sentence reduction, and (2) as a policy matter, a reduction in McLean's sentence would not be consistent with the applicable § 3553(a) factors. (Govt Opp. at 2).

The motion is denied.

Compassionate Release Standard

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *See* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

2

whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582 (c) (1) (A). These policy statements are set forth at § 1B1.13 of United States Sentencing Guidelines. Specifically, courts may consider a defendant's medical circumstances (§ 1B1.13(b)(1)), age (§ 1B1.13(b)(2)), family circumstances (§ 1B1.13(b)(3)), history of abuse (§ 1B1.13(b)(4)), and whether the defendant is serving an unusually long sentence (§ 1B1.13(b)(6)). There is also a "catchall provision," that allows a court to consider "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the considerations in U.S.S.G. § 1B1.13(b)(1)–(4), "are similar in gravity" to such circumstances. (§ 1B1.13(b)(5)).

Here, McLean argues that he qualifies for relief under the unusually long sentence provision (§ 1B1.13(b)(6)). This section is applicable to defendants who (i) received an unusually long sentence, (ii) have served at least 10 years of the term of imprisonment, (iii) there has been a change in law that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and (iv) release would be consistent with defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

McLean also argues that the "catch all" provision (§ 1B1.13(b)(5) provides a basis for the Court to reduce his sentence. McLean claims that his voluntary disassociation from the Newburgh Bloods, coupled with the *Rosemond* "change in law," constitutes an extraordinary and compelling reason to reduce his sentence.

Neither the amendment to the Guidelines nor the Circuit's decision in *Brooker* changed the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must also consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they remain applicable, and determine whether they counsel for or against release. A court always retains discretion to deny a motion for compassionate release if, in its view, the § 3553(a) factors override what would otherwise present extraordinary and compelling circumstances for release.

Exhaustion of Administrative Remedies

The Government represents that Bureau of Prisons records show that McLean filed a request for a reduction in sentence with the BOP, which the bureau denied on May 15, 2025. (Govt. Opp. at 9, n.7).

Accordingly, the Court finds that McLean has exhausted his administrative remedies with the BOP, and his present motion is properly before the Court for adjudication.

McLean's Motion

McLean has failed to carry his burden to show an extraordinary and compelling reason that would justify reducing his sentence. And even if he had carried that burden, the § 3553(a) factors weigh heavily against reducing or terminating McLean's term of imprisonment.

4

*McLean's Rosemond Argument*

McLean argues that, in *Rosemond*, the Supreme Court changed the law regarding aiding and abetting a Section 924(c) violation and, because "[n]owhere in Count 24 is [McLean] charged with having 'advanced knowledge' … of a firearm being used on a particular date around a particular quantity of crack cocaine, … this kind of unanchored Section 924(c) charge is not sustainable," and, "if [McLean] was sentenced today, he likely would have faced an aiding and abetting a 18 U.S.C. Section 922(g) violation instead of a Section 924(c) violation." (Motion 2–3). "The difference would be, a mandatory minimum of 0 years imprisonment as opposed to the 10 mandatory minimum [McLean] was sentenced to on Count 24," leading to "a gross disparity between what his mandatory minimum would be after Rosemond and what his current sentence is." (Motion 3).

McLean is wrong, both as a matter of law and a matter of fact.

*First*, as a matter of law, *Rosemond* did *not* narrow the applicability of aiding and abetting liability in the Second Circuit. Indeed, the Second Circuit's aiding and abetting requirements for a Section 924(c) count prior to *Rosemond* were more stringent than those imposed by *Rosemond*; accordingly, a pre-*Rosemond* plea necessarily satisfied *Rosemond*. *See United States v. Rivera*, 571 F. App'x 55, 59 n.5 (2d Cir. 2014) (noting that the holding of *Rosemond* "expanded aiding and abetting liability under Section 924(c) as previously recognized by this Court, which required an act in furtherance of the use of the firearm, not merely the underlying offense"). *Second*, although Count Twenty-Four charged McLean and others both as principals and aiders-and-abettors, McLean pleaded guilty as a principal. (*See* Plea Tr. 15–16).

5

Accordingly, McLean's *Rosemond* argument fails to establish an extraordinary and compelling reason for a reducing McLean's sentence.

### *McLean's Rosemond Plus Rehabilitation Argument*

McLean argues that his rehabilitation (most notably his gang disassociation) coupled with the "change in law" in *Rosemond*, constitute extraordinary a compelling reason to reduce his sentence. (Motion 3). However, as discussed above, Rosemond does not provide McLean with a basis for relief, and his remaining rehabilitation claim, by itself, cannot form an extraordinary and compelling reason to grant release under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Zavalza-Sanchez*, No. 20 Cr. 92 (JCC), 2024 WL 3071583, at *2 (W.D. Wash. June 20, 2024) (the defendant "suggests that participation in a gang disassociation program is similar in gravity to the other categories. … The Court disagrees. Rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason.")

### *The § 3553(a) Factors*

Even if McLean were able to show an extraordinary and compelling reason for a reduced sentence—and he has not—application of the Section 3553(a) factors would outweigh any justification for early release.

McLean engaged in serious criminal conduct— from narcotics trafficking to participation in murder. He and his fellow Bloods gang members terrorized the Newburgh community. When the Court sentenced McLean to the statutory mandatory minimum sentence (20 years), he was told that the key to shortening his sentence lie with his disassociation from the Bloods and behaving in prison: "I do know that if you continue with your [gang] associations over the course of the next two decades that prison officials have ways of dealing with it, and I do hope that you will be

6

trained and you will be counseled, but I know that you will be tested by what's going to happen to you over the course of the next 18 years if you are bad, *16 and a half years if you are not*." (Sent. Tr. at 19 (Emphasis added)). Unfortunately, McLean has had problems following prison rules. Some of his acts have been non-violent, but others were not:

- In April 2011, McLean was caught fighting another person. (Disciplinary Record 6).
- In August 2012, McLean was caught fighting another person. (Disciplinary Record 4).
- In May 2015, McLean was caught fighting another person. (Disciplinary Record 4).
- In May 2016, McLean was caught making a sexual proposal/threat to another. (Disciplinary Record 3).
- In August 2018, McLean was caught using a food tray as a weapon in a fight with others. (Disciplinary Record 2).
- In June 2019, McLean was caught fighting another person. (Disciplinary Record 2).
- In November 2019, McLean possessed a cellphone in prison. (Disciplinary Record 1).
- In March 2021, McLean possessed a dangerous weapon. (Disciplinary Record 1).

While McLeans has apparently been following prison rules better in recent years and says that he has belatedly disassociated from the Bloods (which, for the purposes of deciding the present motion, the Court accepts as a sincere representation), been working toward his GED, and has completed various BOP self-help courses, the legacy of his serious crimes and prison misconduct weigh against his early release.

7

Accordingly, McLean's motion for compassionate release (ECF 2023) is denied.

Dated: July 30, 2025
New York, New York

*[signature]*

COLLEEN McMAHON
United States District Judge